<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JASPER FRAZIER,<br><br>             Plaintiff,<br><br>    v.<br><br>VICTORIA L. KUHN, et al.<br><br>             Defendants. | Case No. 2:22-cv-2781 (BRM) (CLW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is *pro se* Plaintiff Jasper Frazier's ("Plaintiff") civil rights Amended Complaint, filed pursuant to 42 U.S.C. §1983. (ECF No. 52-1.) The Court previously granted him leave to proceed *in forma pauperis*. (ECF No. 41.)

At this time, the Court must review the Amended Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes the Amended Complaint shall proceed in part.

**I.  BACKGROUND**

Plaintiff is currently confined at East Jersey State Prison in Rahway, New Jersey. He brings this civil rights action, pursuant to 42 U.S.C. § 1983, against multiple defendants ("Defendants").[1] (*See* ECF No. 52-1.)

---

[1] For clarity purposes, the Court lists the Defendants in groups based on which prison they are associated with:

Plaintiff submits that on June 7, 2021, Plaintiff arrived in New Jersey from Indiana Department of Corrections. (*Id.* at 47.) Plaintiff was asked to sign settlements for four Indiana cases. (*Id.*) On June 20, 2021, Plaintiff was transferred to SWSP, where he first learned he was under surveillance by confidential informants, who were using Plaintiff's JPay passcode to hack into Plaintiff's emails and phone calls. (*Id.* at 48.) Plaintiff alleges the confidential informants notified Defendants at SWSP that Plaintiff was asking his family for three legal books. (*Id.* at 49–50.) In July 2021, Plaintiff was transferred to "phase 2," and Defendants Cisrow and Byrd confiscated three legal books related to litigating federal disciplinary habeas and federal/state cases in Indiana. (*Id.* at 50–51.) Plaintiff submits that Defendants Sheppard and Curly informed Plaintiff he would never see his personal property again, and Plaintiff told them he was not going to allow inmates to monitor his JPay emails or GTL phone services. (*Id.* at 52.)

Plaintiff alleges that inmates and confidential informants used Plaintiff's passcodes to gain information on Plaintiff, befriend Plaintiff's friends in Ohio and Indiana, and obtain fake and fabricated "gay" pictures of Plaintiff from private actors at GeoCorp in Indiana and state actors in

---

South Woods State Prison ("SWSP") Defendants: (1) Administrator Al Solenik, (2) Administrator Anthony Gongi, (3) Anthony Degner, (4) Special Intelligence Division ("SID") Ronald Tolbolski, (5) mailroom Sergeant Byrd, (6) mailroom Sergeant Cisrow, (7) Sergeant Curly, (8) Sergeant Tonlin, (9) Officer Shepperd, and (10) JPay/GTL phone services John Doe. (*See id.* at 1.)

Northern State Prison ("NSP") Defendants: (1) Administrator Patrick Nogan, (2) Assistant Administrator McGills, (3) Assistant Administrator Gongi, (4) Assistant Administrator Mario Vera, (5) SID Szuba, (6) SID Regina King, (7) SID Gary Rivera, (8) Lieutenant S. Hassen, (9) mailroom Lieutenant Berryman, (10) mailroom Sergeant Saquay, (11) mailroom Westry, (12) mailroom F. Fergueson, (13) senior correctional police Burton, (14) senior correctional police Briggs, (15) senior correctional police Acosta, (16) law library supervisor Gail Gillispe, (17) JPay John Doe, and (18) GTL phone services Patrick. (*See id.* at 2.)

East Jersey State Prison ("EJSP") Defendants: (1) Assistant Administrator C. Sweeney, (2) SID Santiago, (3) mailroom Mountcastle-Thomas, (4) JPay/GTL phone services John Doe. (*See id.* at 2-3.)

Plaintiff also names Commissioner Victoria Kuhn and Assistant Commissioner Christopher Holmes as Defendants. (*Id.* at 1.)

Indiana State Prison. (*Id.* at 49–50.) Plaintiff claims every time he filed a motion against "them" "they" send out "these fake fabricated gay pictures as retaliation." (*Id.* at 50.) Plaintiff's cellmate informed Plaintiff that SID had been calling him to the office to discuss Plaintiff. (*Id.* at 52.)

On July 9, 2021, Plaintiff was transferred to restrictive housing, and he learned confidential informants and inmates were using his JPay and GTL phone service passcode to obtain emails and phone conversations. (*Id.* at 53.) SWSP allowed these individuals to monitor Plaintiff's phone and email. (*Id.*)

On July 21, 2021, Plaintiff was transferred to NSP. (*Id.* at 54.) Plaintiff was placed with a confidential informant who knew everything about Plaintiff and his family. (*Id.*) On July 30, 2021, Defendant Burton confiscated Plaintiff's legal mail, read it, and informed "D3East" that Plaintiff was a snitch. (*Id.* at 54–55.) On August 3, 2021, Plaintiff was housed in restrictive housing at NSP. (*Id.* at 55.) Plaintiff called his family to inform them that NSP and Indiana have him monitored with JPay and GTL phones and that is how the administration knows about and confiscated his legal mail. (*Id.*)

In August 2021, Plaintiff's cellmate would "sync his JPay tablet [to] inform on Plaintiff to administration [and] Indiana [Department] of Corrections." (*Id.* at 56.) "D3East417 would use the JPay passcode [to] log onto Plaintiff['s] JPay account and read his emails out loud in the dayroom on D3East." (*Id.* at 57.) Plaintiff contends Defendants Burton and Bigelow would find this funny. (*Id.*)

On August 31, 2021, Plaintiff asked a paralegal to make legal copies in the law library and the paralegal left with the legal copies. (*Id.* at 57–58.)

Plaintiff submits that fellow inmate "D3East419 had a cellphone who had fake fabricated gay pictures he obtained from family member." (*Id.* at 58.) This inmate also "befriended

[Plaintiff's] young niece, had her pose in skimpy panties and send him the pictures on JPay." (*Id.*) Plaintiff contacted SID, who covered up the incident and routed Plaintiff's email to the whole D building restrictive housing unit. (*Id.* at 59.) "D3East419" sent the "fake fabricated gay pictures of Plaintiff" to inmates NSP, SWSP, and EJSP inmates. (*Id.*)

In September 2021, Plaintiff gave Defendant Strickler four legal mail envelopes and Defendant Strickler and Sergeant J. Stump removed legal documents from the envelope. (*Id.* at 60–61.) On September 10, 2021, Plaintiff was transferred back to SWSP where he encountered Officer Hirrased and Defendant Tonlin. (*Id.* at 61-62.) These Defendants took Plaintiff's shoes and black Kufi. (*Id.* at 62.) Plaintiff was placed in a cell with rotten trash, mold on the walls, and human snot on the sink. (*Id.*) Defendant Tonlin wrote Plaintiff up for refusing his housing assignment. (*Id.* at 63.) Plaintiff was found guilty based on confidential informants monitoring his JPay emails and GTL phone calls. (*Id.*) Plaintiff's appeal was denied by Defendants Solenik and Degner at SWSP. (*Id.* at 64.) Plaintiff was transferred back to NSP. (*Id.*)

On September 30, 2021, Plaintiff attempted to mail "90 [pages] sign[ed] by [Defendant] Acosta [and] [Sergeant] Spearman" and the documents were confiscated out of the envelope. (*Id.* at 64–65.) In October and December 2022, Plaintiff had six-month account statements confiscated. (*Id.* at 65-66.) In February 2022, Defendant Westry used a black marker to rub out a postal date on legal envelope. (*Id.* at 66.) Legal envelopes were confiscated by Defendant Fergueson. (*Id.*)

From September 2021 to March 2022, confidential informants were allowed to monitor Plaintiff's emails and phone calls. (*Id.* at 65.) In March 2022, Plaintiff was transferred to EJSP. (*Id.* at 67.) Between March and April 2022, Plaintiff sent legal mail to a court in Indiana, which was confiscated. (*Id.* at 67-69.)

## II. Legal Standard

### A. Standard for a *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. DECISION

Plaintiff raises numerous claims against multiple defendants across three separate prisons. The Court will address each claim in turn.

### A. First Amendment Legal Mail

Plaintiff raises a First Amendment legal mail claim, arguing his mail has been opened, read, stolen, or withheld. Plaintiff claims Defendants Byrd, Cisrow, Solenik, Degner, Tolbolski, Szuba, King, and Rivera confiscated his outgoing and inhouse legal mail. (ECF No. 52-1 at 12–13, 15, 17, 26.) Plaintiff claims Defendants Nogan, McGills, Gongi, and Vera instructed Defendant Westry to alter his legal mail, causing Plaintiff to receive it one to two months late. (*Id.* at 24.) Plaintiff claims Defendant Westry altered postage dates to withhold mail and Defendants Berryman, Saquay and Fergueson withheld legal mail. (*Id.* at 30, 66.) Plaintiff alleges Defendants Burton, Briggs, and Acosta removed or switched business slips of legal mail postage to interfere

6

with legal mail and they opened legal envelopes and removed documents. (*Id.* at 32–33.) Plaintiff alleges Defendant Mountcastle-Thomas would remove motions from legal envelopes. (*Id.* at 44–45.)

The opening of legal mail outside the presence of the inmate implicates the First Amendment. *See Fontroy v. Beard*, 559 F.3d 173, 174–75 (3d Cir. 2009) (citing *Jones v. Brown*, 461 F.3d 353, 355 (3d Cir. 2006) (holding that "state prisoners have an interest protected by the First Amendment in being present when their incoming legal mail is opened") The Third Circuit has

> "recognized a cause of action to address '[a] state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate', because such a practice 'interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech.'"

*Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011) (citing *Jones*, 461 F.3d at 359) (reaffirming the holding of *Bieregu v. Reno*, 59 F.3d 1445, 1458 (3d Cir. 1995)). Allegations that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen may also state a First Amendment claim. *McLeod v. Monmouth Cty. Corr. Inst.*, Civ. A. No. 05-4710, 2006 WL 572346, at *3 (D.N.J. Mar. 8, 2006) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1431–32 (7th Cir. 1996)); *Thompson v. Hayman*, Civ. A. No. 09-1833, 2011 WL 2652185, at *5 (D.N.J. July 6, 2011) (finding that opening outside of the prisoner's presence, reading, delaying, or stealing a prisoner's legal mail violates a prisoner's First Amendment rights).

Prisoners need not allege or prove any "actual injury" beyond a direct injury to their First Amendment right to use the mails. *Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir. 2006). Courts, however, have found that mere isolated incidents of interference without evidence of an improper motive, are insufficient to establish a First Amendment violation. *See, e.g. Nixon v. Sec'y Pa. Dep't*

*of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a first Amendment violation." (citation omitted)); *Fuentes v. State of New Jersey Office of Pub. Defs.*, Civ. A. No. 05-3446, 2006 WL 83108, at *5 (D.N.J. Jan. 11, 2006) ("A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.") (citing *Morgan v. Montayne*, 516 F.2d 1367 (2d Cir. 1975), *cert. denied,* 424 U.S. 973 (1976)).

Plaintiff alleges several instances of mail interference in the Amended Complaint. Specifically, Plaintiff claims: Berryman, Saquay, Fergueson, and Westry withheld inbound legal mail and used a black marker to rub out the postal date on an envelope in order to deliver it to Plaintiff one to two months late (ECF No. 52-1 at 30); on July 29, 2021, Plaintiff gave Defendant Burton outgoing legal mail, and it was returned to Plaintiff for failure to have a legal "log slip." When it was returned, it was missing 44 pages (*id.* at 54); on July 30, 2021, Defendant Burton confiscated and read the legal mail (*id.* at 54–55); on September 30, 2021, Defendant Acosta confiscated documents out of a legal envelope (*id.* at 64–65); Defendants Burton, Briggs, and Acosta removed or switched business slips of legal mail postage to interfere with legal mail and they opened legal envelopes and removed documents (*id.* at 32–33); Defendant Mountcastle-Thomas removed motions from legal envelopes (*id.* at 44–45); in February 2022, Defendant Fergueson confiscated legal documents (*id.* at 66); and between September 30, 2021 and April 5, 2022, Plaintiff sent "tremendous worth of dollars [in] legal copies and legal mail postage of Appellate Division [] that never left N.S.P. [or] E.J.S.P." (*Id.* at 65.)

Plaintiff does not specify exactly how many times each of these NSP and EJSP Defendants allegedly stole or altered Plaintiff's legal mail. However, given Plaintiff's *pro se* status, and the

fact that Plaintiff alleges his legal mail was stolen, altered or withheld between September 30, 2021 and April 5, 2021, the Court finds Plaintiff pleads facts showing a pattern of ongoing interference with legal mail against Defendants Westry, Berryman, Saquay, Mountcastle-Thomas, Fergueson Burton, Briggs, and Acosta. Therefore, the Court will proceed Plaintiff's First Amendment legal mail claim against them.

Plaintiff also alleges Defendants Nogan, McGills, Gongi, and Vera instructed Defendant Westry to alter his legal mail, causing Plaintiff to receive it one to two months late. (ECF No. 52-1 at 24.) A § 1983 plaintiff cannot rely solely on a *respondeat superior* theory of liability. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) ("Section 1983 liability cannot be found solely on the basis of *respondeat superior*."). Instead, a plaintiff must allege that a supervisor had a personal involvement in the alleged wrongs. *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted). Plaintiff has alleged that these Defendants personally directed Defendant Westry to alter his legal mail. (ECF No. 52-1 at 24.) Accordingly, the Court will allow his § 1983 First Amendment legal mail interference claim to proceed against Defendants Nogan, McGills, Gongi, and Vera.

Regarding Defendants Byrd, Cisrow, Solenik, Degner, Tolbolski, Szuba, King, and Rivera, Plaintiff claims only that they confiscated his outgoing and inhouse legal mail. (ECF No. 52-1 at 12–13, 15, 17, 26.) Plaintiff fails to plead facts against these Defendants regarding any specifics of the confiscation of his legal mail. Plaintiff makes only a conclusory allegation that these Defendants all confiscated his legal mail. As such, Plaintiff has failed to state a First Amendment

legal mail claim against Defendants Byrd, Cisrow, Solenik, Degner, Tolbolski, Szuba, King, and Rivera. *Iqbal*, 556 U.S. at 678.

## B. Eighth Amendment

### 1. Failure to Protect

Plaintiff raises an Eighth Amendment cruel and unusual punishment claim alleging Defendants Burton, Briggs, and Acosta provided inmates with information that Plaintiff was a "snitch" and killed woman and children. (ECF No. 52-1 at 34.) Plaintiff also alleges Defendant Gillispe was a law library supervisor who allowed a paralegal to research Plaintiff and pass out information to make it look like Plaintiff was a snitch. (*Id.* at 36.) The Amended Complaint also asserts Defendants Kuhn, Holmes, Solenik, Degner, Tolbolski, JPay and GTL phone services John Does, Nogan, McGills, Gorgi, Vera, Hassan, Curly, Tonlin, Sheppard, Russo, Cindy Sweeney, and Santiago used inmates to threaten Plaintiff for filing complaints by allowing the inmates to monitor him through his JPay and phone passcodes, having his cellmate inform on him, and allowing inmates to send "fake fabricated gay pictures" of Plaintiff. (*Id.* at 11, 13-14, 17, 20-21, 23, 29, 41, 43-44.) The Amended Complaint also raises an Eighth Amendment claim against Defendants Berryman, Saquay, Westry, and Fergueson, alleging they provided inmates with Plaintiff's legal mail to read aloud. (*Id.* at 31.)

Courts recognize that prison officials have an affirmative obligation to protect inmates from abuse at the hands of fellow prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted). However, as is the case generally with Eighth Amendment claims, proof of a culpable subjective intent is a critical component of an Eighth Amendment failure-to-protect claim. *Id.* at 834. In *Beers-Capitol*, the Third Circuit explained the basic requirements of a claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." *Id.* This deliberate indifference standard "is a subjective standard under *Farmer*—the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.*

Regarding Defendants Burton, Briggs, and Acosta, Plaintiff alleges they provided inmates with information that Plaintiff was a "snitch" and killed woman and children. (ECF No. 52-1 at 34.) "Courts in the Third Circuit have recognized that being labeled a 'snitch' may constitute an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate." *Williams v. Thomas*, Civ. A. No. 12-1323, 2013 WL 1795578, at *5 (E.D. Pa. Apr. 20, 2013) (citations omitted); *see also Woolfolk v. Meier*, Civ. A. No. 17-3513, 2018 WL 1773397, at *3 (E.D. Pa. Apr. 12, 2018) (finding that a prisoner, who was called "snitch" by corrections officer in front of inmates, stated an Eighth Amendment violation and corresponding substantive due process violation under Fourteenth Amendment). Plaintiff alleges these Defendants told inmates that Plaintiff was a snitch and that he killed woman and children. (ECF No. 52-1 at 34, 36, 54–55.) Plaintiff adequately states a plausible Eighth Amendment claim against Defendants Burton, Briggs, and Acosta. Therefore, the Court will proceed this claim against Defendants Burton, Briggs, and Acosta.

Plaintiff argues Defendant Gillispe was the law library supervisor and "allowed" paralegals at the law library to research information on Plaintiff and pass it out to make it look like Plaintiff was a snitch. (ECF No. 52-1 at 36.) As explained above, a plaintiff cannot rely solely on a

*respondeat superior* theory of liability. *See Alexander*, 144 F. App'x at 925 ("Section 1983 liability cannot be found solely on the basis of *respondeat superior*."). Instead, a plaintiff must allege that a supervisor had a personal involvement in the alleged wrongs. *See Rode*, 845 F.2d at 1207. Plaintiff fails to submit facts to support that Defendant Gillispe knew of or was personally involved in the actions of the paralegal. As such, Plaintiff fails to plead sufficient facts to state a claim for relief under the Eighth Amendment against Defendant Gillispe. Plaintiff's Eighth Amendment claim as it pertains to Defendant Gillispe is dismissed without prejudice.

The Amended Complaint sets forth conclusory allegations against Defendants Kuhn, Holmes, Solenik, Degner, Tolbolski, JPay and GTL phone services John Does, Nogan, McGills, Gorgi, Vera, Hassan, Curly, Tonlin, Sheppard, Russo, Cindy Sweeney, and Santiago. (*See* ECF No. 52-1 at 11, 13–14, 17, 20-21, 23, 29, 31, 41, 43–44.) Plaintiff alleges these Defendants used inmates to get Plaintiff's passcodes, used his cellmate to send "fake fabricated gay pictures of [Plaintiff] having sex with a man," and used a "private actor in Indiana to send fake fabricated gay pictures of Plaintiff . . . to endanger his life." (*Id.*) Plaintiff fails to plead specific acts by each Defendant. Rather, he makes conclusory arguments that the Defendants shared his passcodes and allowed inmates to make and share fake pictures of Plaintiff. Plaintiff fails to provide well-pleaded facts regarding the actions of each of the numerous Defendants, such as who shared Plaintiff's passwords and with which inmates. Plaintiff does not allege sufficient facts to show that these Defendants participated in the making or sharing of these alleged fake pictures of Plaintiff, nor does he sufficiently allege that Defendants were aware of these pictures and the risk they posed to Plaintiff.

This type of group pleading is prohibited. *Galicki v. New Jersey*, Civ. A. No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (citing *Aruanno v. Main*, 467 F. App'x 134, 137–38

(3d Cir. 2012) (dismissing a § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants)). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When a number of defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, Civ. A. No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (citation omitted). A complaint that contains "impermissibly vague group pleading" will be dismissed. *Id.* at *3. The Amended Complaint submits the same claim against numerous Defendants without alleging facts to show personal involvement. These vague and conclusory allegations that all named Defendants in this claim provided "inmates" with Plaintiff's passcodes do not satisfy the plausibility standard with respect to Plaintiff's Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678. Therefore, Plaintiff's Eighth Amendment claim against Defendants Kuhn, Holmes, Solenik, Degner, Tolbolski, JPay and GTL phone services John Does, Nogan, McGills, Gorgi, Vera, Hassan, Curly, Tonlin, Sheppard, Russo, Cindy Sweeney, Santiago, Berryman, Saquay, Westry, and Fergueson is dismissed without prejudice.

The remainder of Plaintiff's claims are dismissed without prejudice for the reasons that follow.

### 2. Conditions of Confinement

Plaintiff raises an Eighth Amendment conditions of confinement claim against Defendants Curly, Tonlin, and Sheppard. (ECF No. 52-1 at 20-21.) Plaintiff alleges these Defendants placed him in restrictive housing with mold on the floors, rotten food, and snot on the walls. (*Id.*) Plaintiff also alleges an Eighth Amendment conditions of confinement claim against NSP defendants JPay

John Doe and GTL phone service-Patrick, for allegedly denying Plaintiff use of the phone from August 2021 to December 2021. (*Id.* at 39.)

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer*, 511 U.S. at 832 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "The Eighth Amendment imposes duties on prison officials to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 676–77 (3d Cir. 2017) (quoting *Farmer*, 511 U.S. at 832). Specifically:

> To establish an Eighth Amendment conditions of confinement claim, [Plaintiff] must show that (1) the deprivation alleged was objectively, 'sufficiently serious' such that the prison officials' acts or omissions resulted in the denial of 'the minimal civilized measure of life's necessities'; and (2) that the prison officials exhibited a 'deliberate indifference' to his health and safety.

*Id.* at 677 (quoting *Farmer*, 511 U.S. at 834).

Plaintiff alleges Defendants Curly, Tonlin, and Sheppard placed him in restrictive housing, in a cell containing mold and other bodily fluids. However, Plaintiff fails to allege any facts that Defendants Curly, Tonlin, and Sheppard were aware of these conditions. *Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (quoting *Farmer*, 511 U.S. at 837) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.") Therefore, Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Curly, Tonlin, and Sheppard is dismissed without prejudice.

Plaintiff claims NSP Defendants JPay John Doe and GTL phone service-Patrick denied him use of the phone. (ECF No. 52-1 at 39.) However, Plaintiff has failed to provide sufficient

facts which would allow this Court to evaluate the viability of either of this claim, as it is not even clear whether he is being denied access to the phone based on a restriction imposed by the prison or a court order. Nor has Plaintiff alleged with any specificity how these Defendants are involved in the restriction of his phone access, which is a requirement to state a claim under § 1983. *Rode*, 845 F.2d at 1207–08 (finding that "a defendant in a civil rights action must have personal involvement in the alleged wrongs"). Based on the lack of information provided by Plaintiff, the Court must dismiss without prejudice any intended constitutional claims for violation of his right to use the telephone. *Iqbal*, 556 U.S. at 678.

### C. First Amendment Right of Access to the Courts

Plaintiff raises a First Amendment access to the courts claim against Defendants Solenik, Degner, Nogan, Tolbolski, Byrd, Cisrow, King, Szubi, Rivera, McGills, Gorgi, Vera, Westry, Burton, Briggs, Acosta, Hassan, Russo, Sweeney, Berryman, Saquay, and Fergueson. (ECF No. 52-1 at 12-13, 15, 17, 24, 26, 28, 30, 32-33, 40.) Plaintiff also raises this claim against Defendants Commissioner Kuhn and Assistant Commissioner Holmes. (*Id.* at 10.)

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996). Two general categories of denial of access to the courts claims exist: (1) claims that systemic official action frustrates a plaintiff in preparing and filing suits at the present time, where the suits could be pursued once the impediment has been removed; and (2) claims of specific cases that cannot be tried (or tried with all material evidence), no matter what official action may be in the future. *Christopher v. Harbury*, 536 U.S. 403, 412-14 (2002). Regardless of the category, a plaintiff must identify a "nonfrivolous," "arguable" underlying claim and must address the underlying claim by allegations in the complaint sufficient to give fair notice to a defendant. *Id.* at

415–16. In other words, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010) ("[A] prisoner making an access to courts claim is required to show that the denial of access caused actual injury.")

Under this standard, Plaintiff fails to state a claim upon which relief can be granted. Plaintiff alleges Defendants Nogan, Russo, and Sweeney denied him access to the courts by removing legal documents from envelopes. (ECF No. 52-1 at 40.) Plaintiff alleges Defendant Hassan denied him a proper law library and access to the courts. (*Id.* at 28.) Plaintiff claims Defendants Nogan, McGills, Gorgi, and Vera instructed Defendant Westry to alter his legal mail, causing Plaintiff to receive it late. Plaintiff alleges he lost a case against GeoCorp in Indiana because of the tampering with his legal mail. (*Id.* at 24.) Plaintiff claims Defendant Westry altered postage dates to withhold mail and Defendants Berryman, Saquay and Fergueson withheld legal mail causing him to lose a case against GeoCorp in Indiana. (*Id.* at 30.)

The facts asserted by Plaintiff fail to explain how the tampering with his mail obstructed him from a legal claim in Indiana. More importantly, Plaintiff fails to allege any specific facts from which the Court can conclude Plaintiff's Indiana claim had any validity. *See, e.g., Drake v. Muniak*, Civ. A. No. 13-3868, 2015 WL 2169875, at *8 (D.N.J. May 7, 2015) (finding that plaintiff's lack of law library access fails to state access to courts claim where plaintiff fails to adequately describe any underlying claim he was prevented from raising); *see also Jordan v. Cicchi*, 617 F. App'x 153, 158 (3d Cir. 2015) ("In sum, with respect to his access to the courts claim, Jordan failed to identify any actual injury suffered as a direct result of any withheld legal mail. . . .")  Therefore, Plaintiff's First Amendment access to courts claims against Defendants

Nogan, McGills, Tolbolski, Byrd, Cisrow, King, Szubi, Rivera Gorgi, Vera, Westry, Burton, Briggs, Acosta, Hassan, Russo, Sweeney, Berryman, Saquay, and Fergueson are dismissed without prejudice for failure to state a claim for relief.

Similarly, Plaintiff fails to plead sufficient facts to proceed a claim for First Amendment access to court against Defendants Kuhn and Holmes. Plaintiff claims Defendants Commissioner Kuhn and Assistant Commissioner Holmes denied him access to the courts in Indiana and New Jersey to "create a widespread policy by giving inmates the passcode to hack into Plaintiff['s] JPay, read his emails, report back to administration, allow inmates to possess GTL phone passcode to listen to Plaintiff phone conversation to his family." (ECF No. 52-1 at 10.) Plaintiff fails to plead facts to support a claim that Defendants Kuhn and Holmes' alleged actions caused any injury to an underlying claim Plaintiff had. Accordingly, Plaintiff's First Amendment access to courts claim against Defendants Kuhn and Holmes is dismissed without prejudice.

### D.  First Amendment Retaliation

Plaintiff alleges a First Amendment Retaliation claim against Defendants Solenik, Degner, Byrd, Cisrow, Szuba, King, Rivera, Tolbolski, Nogan, Russo, and Sweeney alleging they retaliated against Plaintiff's free speech by confiscating legal mail, removing documents from envelopes, failing to investigate mail issues (ECF No. 52-1 at 12–13, 15, 17, 26, 40.) Plaintiff alleges Defendants Curly, Tonlin, Sheppard, and Santiago retaliated against his free speech for speaking out against abuse. (*Id.* at 28.) The Amended Complaint also alleges Defendants JPay liaison and GTL phone services-Patrick retaliated against Plaintiff for exposing illegal practice of JPay. (*Id.* at 37-38.) Plaintiff claims Defendants Berryman, Saquay, Westry, and Fergueson retaliated against Plaintiff for filing complaints by changing the post mark dates on his legal mail so Plaintiff would receive the mail late. (*Id.* at 30.) Finally, the Amended Complaint submits Defendant Gillispe

17

retaliated against Plaintiff for filing this matter by allowing paralegals to overcharge Plaintiff for legal copies and pass out copies of documents to other inmates. (*Id.* at 35–36.)

To establish a First Amendment retaliation claim, a plaintiff "must prove that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

Plaintiff has not alleged any facts suggesting his constitutionally protected conduct was a substantial factor for each Defendant's alleged actions. Once a plaintiff has provided facts showing protected conduct and an adverse action, he must provide facts showing a causal link between the two. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Where a causal link cannot be shown with direct evidence, a plaintiff may try to satisfy that burden by demonstrating: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson*, 834 F.3d at 422; *see also Wilcox v. Martinez*, 858 F. App'x 477, 479 (3d Cir. 2021) (affirming dismissal of First Amendment retaliation claim where prisoner "did not plausibly allege a causal link between the exercise of his constitutional rights and the adverse action").

Although Plaintiff claims these Defendants retaliated against him for complaining, there are no well-pleaded facts showing the Defendants were even aware of Plaintiff's "complaints." Therefore, Plaintiff fails to state a claim for First Amendment retaliation against any of the Defendants. The First Amendment retaliation claims are dismissed without prejudice for failure to state a claim for relief.

### E.  Fourth Amendment

Plaintiff claims Defendants Kuhn, Holmes, Solenik, Degner, Byrd, Cisrow, Curly, Tonlin, Sheppard, Szuba, King, Rivera, Hassan, Northern State Prison JPay liaison and GTL phone service- Patrick, Nogan, Russo, Sweeney, Santiago, and JPay and GTL phone service John Does illegally wiretapped his email and phone calls by supplying inmates with Plaintiff's passcodes, thereby infringing on his Fourth Amendment right to be free of unreasonable searches and seizures. (ECF No. 52-1 at 11, 13, 18, 20, 22, 25, 28, 38, 40–41, and 43.)

The Fourth Amendment of the Constitution of the United States guarantees a right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. The Supreme Court has held that "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *see Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells." (citing *Hudson*, 568 U.S. at 529)). Whether a search or seizure is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)).

Here, Plaintiff alleges all of the above-named Defendants illegally seized Plaintiff's JPay emails and GTL phone calls by supplying inmates with Plaintiff's passcodes to hack into Plaintiff's emails and phone calls in violation of wiretapping laws. (ECF No. 52-1 at 11, 13, 18, 20, 22, 26, 28, 38, 40–41, and 43.)

Plaintiff raises nearly identical allegations against Defendants Kuhn, Holmes, Solenik, Degner, Byrd, Cisrow, Curly, Tonlin, Sheppard, Szuba, King, Rivera, Hassan, Northern State

Prison JPay Liaison and GTL phone service- Patrick, Nogan, Russo, Sweeney, Santiago, and JPay and GTL phone service John Does regarding his Fourth Amendment claim that they illegally seized his passcodes. Plaintiff fails to allege specific facts that can be attributed to any specific Defendant. Plaintiff makes conclusory statements that Defendants seized his passcodes.

As explained above, mere "conclusory allegations against [d]efendants as a group" which "[fail] to allege the personal involvement of any [d]efendant" are insufficient to survive a motion to dismiss. *Galicki*, 2015 WL 3970297, at *2. A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.*  Any Fourth Amendment claim against Defendants Kuhn, Holmes, Solenik, Degner, Byrd, Cisrow, Curly, Tonlin, Sheppard, Szuba, King, Rivera, Hassan, Northern State Prison JPay Liaison and GTL phone Service- Patrick, Nogan, Russo, Sweeney, Santiago, and JPay and GTL phone service John Does for the allegedly unlawful seizure of Plaintiff's passcodes are dismissed without prejudice.[2]

---

[2] Plaintiff states that he is raising a Fourth Amendment claim against Defendants Solenik, Degner, Tolbolski, Byrd, Cisrow, Curly, Tonlin, Sheppard regarding the confiscation of three legal books and personal property through illegal seizure. (ECF No. 52-1 at 13, 15, 18, 19–20.) However, the Court construes this as a First Amendment legal mail claim, which will be addressed above. If Plaintiff is attempting to bring a Fourteenth Amendment due process claim that his rights were violated when his three books were seized, that claim also fails. In general, to establish a procedural due process claim for the deprivation of property, a plaintiff must show that he possessed a property interest, of which he was deprived by the state, and that the plaintiff did not receive notice and a reasonable opportunity to be heard. *See Rusnak v. Williams*, 44 F. App'x 555, 558 (3d Cir. 2002). "Where a state actor deprives an individual of property without authorization, [however,] either intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981); overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986)." *Love v. New Jersey Dep't of Corr.*, Civ. A. No. 14–5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015). The State of New Jersey has provided inmates, such as Plaintiff, with a proper post deprivation remedy in the form of the New Jersey Tort Claims Act. *See* N.J. Stat. Ann. § 59:1–1, *et seq.*; *Love*, 2015 WL 2226015, at *5. Plaintiff fails to submit any facts regarding how he was denied his post-deprivation rights.

### F. Fourteenth Amendment

Plaintiff claims Defendants Kuhn, Holmes, Tolbolski, Byrd, Cisrow, Curly, Tonlin, Sheppard, Jpay and GTL phone services John Does, Nogan, McGillis, Gorgi, Vera, Szuba, King, Rivera, Hassan, Burton, Briggs, Acosta, Gillispe, JPay Liaison and GTL phone service- Patrick, Russo, Sweeney, Santiago, Berryman, Saquay, Westry, and Fergueson violated his Fourteenth Amendment right to equal treatment. (ECF No. 52-1 at 11, 17-19, 21, 23, 26, 27, 29, 31, 35, 37, 39, 42.)

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. To bring a successful claim pursuant to § 1983 for a denial of equal protection, a plaintiff must plead sufficient facts to indicate the existence of purposeful discrimination and that he was treated differently than others similarly situated to him. *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (citation omitted). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (citation omitted).

Plaintiff claims the Defendants named in this claim violated his Fourteenth Amendment right to equal treatment, alleging that they did not interfere with other inmates' mail, phone, or family relationships. (ECF No. 52-1 at 11, 17-19, 21, 23, 26, 27, 29, 35, 37, 39, 42.) However, Plaintiff fails to submit any facts regarding the existence of purposeful discrimination. Plaintiff also provides no supporting factual allegations regarding other inmates and how they were similarly situated to Plaintiff or how they were treated differently. Plaintiff's Amended Complaint fails to provide any allegations which even suggest these basic and rudimentary components of an equal protection claim. *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992) ("To

bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they received different treatment from that received by other individuals similarly situated.") Therefore, Plaintiff fails to state a claim against Defendants Kuhn, Holmes, Tolbolski, Byrd, Cisrow, Curly, Tonlin, Sheppard, Jpay and GTL phone services John Does, Nogan, McGillis, Gorgi, Vera, Szuba, King, Rivera, Hassan, Burton, Briggs, Acosta, Gillispe, JPay Liaison and Global TelLink Phone Service-Patrick, Russo, Sweeney, Santiago, Berryman, Saquay, Westry, and Fergueson for a violation of the Equal Protection Clause and this claim is dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's First Amendment legal mail claim against Defendants Westry, Berryman, Saquay, Fergueson Burton, Briggs, Acosta, Nogan, McGills, Gongi, and Vera will **PROCEED**. Plaintiff's Eighth Amendment failure to protect claim against Defendants Burton, Briggs, and Acosta will also **PROCEED**. Plaintiff's remaining claims and Defendants are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. An appropriate order follows.

Dated: June 22, 2022

/s/ Brian R. Martinotti
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**